#24505-aff in pt & rev in pt-PORTRA, Circuit Judge
**2007 SD 103**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JOAN M. SAUDER,                                    Employee and Appellant,

    v.

PARKVIEW CARE CENTER,
Bryant, South Dakota                               Employer,

    and

TRAVELERS INSURANCE COMPANIES
and BERKLEY ADMINISTRATORS,                        Insurers and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA
* * * *

HONORABLE JAMES W. ANDERSON
Judge

* * * *

N. DEAN NASSER, Jr. of
Nasser Law Offices                 Attorneys for employee
Sioux Falls, South Dakota          and appellant.

R. ALAN PETERSON of
Lynn, Jackson, Shultz & Lebrun     Attorneys for appellee
Sioux Falls, South Dakota          Travelers Insurance.

TIMOTHY M. ENGEL of
May, Adam, Gerdes & Thompson       Attorneys for appellee
Pierre, South Dakota               Berkley Administrators.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 27, 2007

OPINION FILED 10/17/07

#24505

PORTRA, Circuit Judge

[¶1.] This case is an administrative appeal from the Sixth Judicial Circuit, Hughes County, the Honorable James W. Anderson, presiding. The plaintiff, Joan Sauder (Sauder), seeks an award of workers' compensation benefits. The circuit court dismissed Sauder's benefit claims against Parkview Care Center (Parkview or Employer), Travelers Insurance Companies (Travelers), and Berkley Administrators (Berkley) (collectively Respondents). We affirm in part and reverse in part.

## BACKGROUND

[¶2.] Sauder worked for Parkview from 1983 to 2001 as the Social Service Director designee. Sauder did not have credentials as a social worker, but she was an advocate for the residents and was responsible for obtaining residents, admitting residents, and making sure that the needs of the residents were met. Sauder described her job as "a sedentary office and clerical worker with collateral administrative work duties."

[¶3.] In September 1993 Sauder moved into a new office which had been created by partitioning off part of the chapel at Parkview. Prior to moving into this office, Sauder had no problems with asthma, seasonal allergies or breathing in general. About one month after Sauder moved into the office, she noticed the office started smelling musty and that the room was very warm. After some time in the office, Sauder began to complain of a stuffy head and headaches. In July 1994 Sauder was diagnosed with a serious sinus infection.

[¶4.] Sauder saw several health care providers for her respiratory problems, including the Mayo Clinic. In late 1994 or early 1995 Sauder noticed a black liquidy

substance running down the walls of her office.  She also noticed that she felt worse when she was at work compared to when she was away from work and started to associate her respiratory problems with the condition of her office.  By November 1995 other staff members at Parkview were becoming ill, and Sauder was moved to a different work area.

[¶5.]        In November 1995 Sauder completed a first report of injury.  Sauder indicated that her respiratory problems were the result of mold and other exposures at work, beginning in September 1993.  Travelers provided workers' compensation insurance to Parkview from May 25, 1994, until May 25, 1995, while Berkley provided workers' compensation insurance to Parkview from May 25, 1995, until April 27, 1996[1].  On January 19, 1996, Travelers sent a denial letter to Sauder, however, a copy of this letter was not sent to the Department of Labor (Department).  On March 7, 1996, Berkley sent a denial letter to Sauder and the Department.

[¶6.]        Sauder continued to see various physicians for her respiratory problems, including physicians at the Mayo Clinic and Jewish Medical Center in Denver.  She subsequently filed a notice of occupational disease on December 6, 2001, and a petition for hearing with the Department on September 16, 2002.  Sauder alleged both an occupational pulmonary disease and a work-related pulmonary injury which caused disablement as of October 10, 2001.  Sauder later filed an amended petition for hearing with the Department on June 23, 2003.

---

1.      Berkley is not an insurer.  Rather, it is the third party administrator for Tri-State Insurance Company of Minnesota.

-2-

[¶7.]       On January 31, 2005, the Department issued a letter decision granting summary judgment in favor of Berkley on Sauder's claim for benefits based on an injury, holding that Sauder had failed to file her petition for hearing within two years of Berkley's letter denying compensability as required by SDCL 62-7-35. Travelers' motion for summary judgment was denied on the basis that Travelers' denial letter was ineffective to start the statute of limitations period because a copy was not provided to the Department. The overall result of the 2005 letter decision was that Sauder could continue to pursue benefits from Travelers based on an injury theory and from both Travelers and Berkley on an occupational disease theory.

[¶8.]       On January 5, 2006, the Department issued another letter decision granting summary judgment dismissing Sauder's occupational disease claim in its entirety. The Department concluded that the mold exposure which Sauder claimed to have suffered and her resulting medical condition did not constitute an occupational disease under South Dakota law.

[¶9.]       Sauder filed an appeal to the circuit court from both the 2005 letter decision and the 2006 letter decision. On April 12, 2006, upon agreement of the parties, the court entered an order for partial remand directing the Department to clarify and address certain matters. On October 4, 2006, the Department entered its order on remand reaffirming its 2005 and 2006 letter decisions.

[¶10.]       Sauder then filed another appeal with the circuit court. This appeal was from the Department's 2005 letter decision, 2006 letter decision, and order on remand. On March 29, 2007, the circuit court entered its order and judgment on

appeal which reversed the Department's ruling that denied Travelers' motion for summary disposition on Sauder's injury claim and affirming all other decisions in their entirety. The result of the order and judgment on appeal is that all of Sauder's benefit claims have now been dismissed against Parkview, Travelers, and Berkley.

## STANDARD OF REVIEW

[¶11.] In appeals from administrative agencies, "[o]ur standard of review is controlled by SDCL 1-26-37." Kuhle v. Lecy Chiropractic, 2006 SD 16, ¶ 15, 711 NW2d 244, 247 (quoting Kassube v. Dakota Logging, 2005 SD 102, ¶ 25, 705 NW2d 461, 465). "When a circuit court has reviewed an administrative agency's decision, we review the agency's decision unaided by any presumption that the circuit court's decision was correct." Meligan v. Dept. of Revenue and Regulation, 2006 SD 26, ¶ 13, 712 NW2d 12, 17 (quoting *Kassube*, 2005 SD 102, ¶ 25, 705 NW2d at 465). "The Department's factual findings and credibility determinations are reviewed under a clearly erroneous standard." *Kuhle*, 2006 SD 16, ¶ 15, 711 NW2d at 247 (citations omitted). "Questions of law are reviewed de novo." *Id*. at ¶ 16.

## ISSUES AND ARGUMENTS

## ISSUE ONE

[¶12.] **Whether Sauder's claims against Berkley and Travelers are barred by the statute of limitations.**

[¶13.] Berkley and Travelers both contend that the statute of limitations has expired for Sauder's claim and, therefore, her claim should be barred. SDCL 62-7-35 provides the applicable limitations period:

> The right to compensation under this title shall be forever barred unless a written request for hearing pursuant to § 62-7-12 is filed by the claimant with the department within two years after the self-insurer or insurer notifies the claimant and the department, in writing, that it intends to deny coverage in whole or in part under this title.  If the denial is in part, the bar shall only apply to such part.

Sauder argues, for a variety of reasons, that the denials by both Berkley and Travelers were ineffective to begin the running of the limitations period.  We examine Sauder's arguments as to each insurer separately.

*A.  Berkley*

[¶14.]       Sauder first contends that Berkley's denial is ineffective because they were not the insurer on the risk, they did not have the legal ability to deny the claim for Travelers and they should have simply told Sauder that Travelers was the insurer on the risk and that she should seek compensation from them.  We find these arguments to be without merit.  Berkley never contended that they were acting for Travelers or denying the claim for Travelers.  Berkley had the right to deny the claim for the time that they were on the risk.

[¶15.]       Sauder also contends that Berkley's denial was ineffective because it was filed outside the maximum number of days as allowed by SDCL 62-6-3.  That statute provides:

> The insurer shall file a copy of the report required by § 62-6-2 with the Department of Labor within ten days after receipt thereof.
>
> The insurer or, if the employer is self-insured, the employer, shall make an investigation of the claim and shall notify the injured employee and the department, in writing, within twenty days from its receipt of the report, if it denies coverage in whole or in part.  This period may

be extended not to exceed a total of thirty additional days by the department upon a proper showing that there is insufficient time to investigate the conditions surrounding the happening of the accident or the circumstances of coverage. If the insurer or self-insurer denies coverage in whole or in part, it shall state the reasons therefor and notify the claimant of the right to a hearing under § 62-7-12. The director of the Division of Insurance, or the secretary of labor if the employer is self-insured, may suspend, revoke, or refuse to renew the certificate of authority, or may suspend or revoke all certificates of authority granted under Title 58 to any company or employer which fails, refuses, or neglects to comply with the provisions of this section. A company or employer which fails, refuses, or neglects to comply with the provisions of this section is also subject to an administrative fine of one hundred dollars payable to the Department of Labor for each act of noncompliance, unless the company or employer had good cause for noncompliance.

[¶16.] Sauder's position is that because Berkley's denial was filed outside the maximum limit of fifty days allowed by the statute, the denial was ineffective to start the running of the two year statute of limitations period. However, Berkley argues that the penalties provided for in SDCL 62-6-3 are the exclusive remedies for a violation of that statute, without effect on the statute of limitations, and therefore Sauder's claim is time barred.

[¶17.] "If the words and phrases in the statute have plain meaning and effect, [the court] should simply declare their meaning and not resort to statutory construction." In re West River Electric Assn., 2004 SD 11, ¶ 15, 675 NW2d 222, 226. From a plain reading of the statute, it is clear that the only penalties provided for an untimely denial are revocation of certificates of authority and/or a one hundred dollar fine. There is nothing in the statute indicating that tolling the statute of limitations is one of the penalties for filing outside of the allowable time

frame. If Berkley failed to comply with the statute, then it is up to the director of the Division of Insurance to penalize them in a manner provided for by the legislature. Furthermore, following Sauder's logic, if an insurer failed to file a timely denial, the statute of limitations would never begin to run thereby allowing a potential claim to drag on indefinitely. This is an absurd result and would be contrary to SDCL 62-7-35 wherein the legislature set forth the limitations period for a workers' compensation claim and the events that trigger the running of that period.

[¶18.] Sauder's final contention regarding Berkley's denial is that it is ineffective as it was not sent by registered or certified mail as provided by SDCL 62-7-30, which states:

> All notices or orders provided for in this chapter may be served personally or by registered or certified mail. When served by registered or certified mail, proof by affidavit thereof must be accompanied by post office return receipt. When, however, any party is represented by an attorney, such service must be made on such attorney, and may be made either in the manner provided in this section, or in the manner provided by § 15-6-5.

[¶19.] However, Berkley contends that it substantially complied with the requirements of SDCL 62-7-30 and, therefore, the notice was effective.

> 'Substantial compliance' with a statute means actual compliance in respect to the substance essential to every reasonable objective of the statute. It means that a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which it was adopted. Substantial compliance with a statute is not shown unless it is made to appear that the purpose of the statute is shown to have been served. What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case.

Olson v. Equitable Life Assur. Co., 2004 SD 71, ¶ 30, 681 NW2d 471, 477 (quoting Myears v. Charles Mix Co., 1997 SD 89, ¶ 13, 566 NW2d 470, 474).

[¶20.]    We first note that SDCL 62-7-30 provides that notices "may" be served personally or by registered or certified mail, not that they "shall" be served in such a manner.  Clearly, it would have been just as easy for the legislature to use the latter word, but they chose not to.  We presume the legislature means what it says.  *See* Crescent Electric Supply Co. v. Nerison, 89 SD 203, 210, 232 NW2d 76, 80 (1975)(declaring our assumption "that statutes mean what they say and that legislators have said what they meant.").

[¶21.]    We also recognize that the primary purpose of SDCL 62-7-30, read in conjunction with SDCL 62-7-35, is to ensure that the employee, and to a lesser extent the Department, receive notice of an insurer's denial.  In this case, Sauder and the Department received Berkley's denial letter, thus fulfilling that purpose.  The employer that proceeds without using registered or certified mail does so at its own risk in that it may not be able to show service of the denial.  However, Sauder admits receiving notice by regular mail and has suffered no prejudice thereby.  Therefore, we find that Berkley substantially complied with SDCL 62-7-30.  We affirm the circuit court's decision on this issue as to Berkley.

*B.  Travelers*

[¶22.]    In addition to the arguments set out above with regard to Berkley, Sauder also contends that Travelers' denial did not start the statute of limitations running because the denial was not filed with the Department.  Travelers argues

that it has substantially complied with the statute because Sauder actually received notice.

[¶23.]    SDCL 62-7-35, as set out above, constitutes the statute of limitations for worker's compensation claims. Clearly, the statute provides that the limitations period does not begin to run until *the claimant and the Department* have been notified in writing of the denial. The statute is unambiguous regarding who needs to receive notice to begin the running of the limitations period.

[¶24.]    Unlike Berkley, Travelers has not shown substantial compliance with the notice provisions. Whereas Berkeley did not comply with the form of the statutory notice requirement, Travelers did not comply with the substance of the requirement since it failed to provide notice to the Department at all. One of the purposes of the notice statute is for the Department to stay abreast of claims and denials, and that purpose was not achieved.

[¶25.]    The circuit court minimized the importance of the notice to the Department, finding that the Department overestimated its own importance in the process because they would simply just file the notice away. However, in order to find substantial compliance, we must find compliance with *every reasonable objective* of the statute. It does not matter that notice to the claimant may be somewhat more important than notice to the Department because notice to the Department is one of the reasonable objectives of the statute. To hold otherwise would be to rewrite the statute for the legislature, which we will not do. *See* Martinmaas v. Engelmann, 2000 SD 85, ¶ 49, 612 NW2d 600, 611. Therefore, we reverse the circuit court's decision as to Travelers.

ISSUE TWO

[¶26.] **Whether Respondents are estopped from asserting the statute of limitations because their combined actions lulled Sauder into a false sense of security.**

[¶27.] Sauder contends that acts of Parkview, Travelers, and Berkley combined to lull her into a false sense of security so that she did not file a petition for hearing until more than six years after her claim had been denied. Sauder contends that because of their actions, the Respondents should be estopped from asserting the statute of limitations as a defense to her claim.

[¶28.] Sauder's contention is unsupported by the record. Sauder received denials from both Berkley and Travelers, and she testified at her deposition that she knew that she was on her own with her claim and that no one was going to help. There is no evidence to support her claim that anyone made intentional misrepresentations to her or in any way acted to mislead her. Accordingly, we affirm the circuit court on this issue.

ISSUE THREE

[¶29.] **Whether Sauder's condition constituted an occupational disease under SDCL 62-8-1(6).**

[¶30.] Sauder contends that her fungal sinusitis is an occupational disease as it arose as the result of a distinctive feature of the kind of work performed by her and others similarly employed. Sauder claims that her occupation was unique and should be defined as an office worker confined to an unventilated, totally enclosed moist office room, rather than just an office worker. Respondents argue that Sauder's occupation was that of a social worker or social worker designee and that

her condition is not an occupational disease because her exposure to mold was not an ordinary and generally recognized risk of her occupation.

[¶31.]		SDCL 62-8-1(6) defines "occupational disease" as a "disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment."  To be an occupational disease the injury must be caused by a distinctive feature of the claimant's occupation, not by the environmental conditions of the claimant's workplace.  *See* Zoss v. United Bldg. Centers, Inc., 1997 SD 93, ¶ 12, 566 NW2d 840, 844.  (*overruled on other grounds*). "Unless the condition is 'intrinsic' to an occupation, one does not suffer from an occupational disease."  Sauer v. Tiffany Laundry & Dry Cleaners, 2001 SD 24, ¶ 11, 622 NW2d 741, 744 (citing *Zoss*, 1997 SD 93, ¶ 14, 566 NW2d at 845).

[¶32.]		Sauder's condition arose because of an environmental condition of her workplace, that being the presence of mold, not by a distinctive feature of her occupation.  Be her occupation social worker, social worker designee, or sedentary office worker, exposure to mold was not a distinctive feature of her occupation.  The fact that many staff members of Parkview, all of various occupations, became ill only highlights the fact that her health problems were caused by the condition of her workplace and not by a distinctive feature of her occupation.  We affirm the circuit court on this issue.

ISSUE FOUR

[¶33.]		**Whether the Department had authority and jurisdiction to issue its rulings.**

[¶34.] Sauder claims that the Department exceeded its authority in this case because, as Sauder sees it, the Department was resolving a dispute between insurers that had little to do with her substantive rights.

[¶35.] The Department has statutory authority to hold hearings to decide whether claimants are entitled to workers' compensation benefits. *See* SDCL 62-7-12, *et. seq.* In this case, they were doing exactly what they are given authority to do, which is deciding whether Sauder is entitled to workers' compensation benefits. We affirm the circuit court on this issue.

## CONCLUSION

[¶36.] We reverse the circuit court on Sauder's injury claim against Travelers and remand to the Department for further proceedings consistent with this opinion. We affirm the circuit court on all other issues.

[¶37.] Affirmed in part and reversed in part.

[¶38.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

[¶39.] PORTRA, Circuit Judge, for SABERS, Justice, disqualified.